**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ROBERT G. MOYA,

       Plaintiff,

v.                                No. 2:18-cv-00494-GBW-KRS

CITY OF CLOVIS, and OFFICER BRENT
AGUILAR and SARGENT JAMES GURULE,
in their individual capacities and as employees
of the City of Clovis,

       Defendants.

## ORDER GRANTING MOTION TO COMPEL

**THIS MATTER** comes before the Court on Plaintiff's motion to compel discovery

responses. (Doc. 49). In two requests for production, Plaintiff sought from Defendant Brent

Aguilar documents comprising his "personnel file" and those "concerning or at all relevant to

any formal or informal complaint made against [him][.]" (*Id.*, at 2). Although initially resistant,

Aguilar did produce some responsive documents, but withheld others, objecting on privilege,

overbreadth, relevance, undue burden, and vagueness grounds. In response to the motion,

Aguilar calls the demand for his personnel file and complaints against him as "irrelevant kitchen

sink requests." He also insists he is exempted from providing "internal evaluations, disciplinary

reports," or documentation on "promotion, demotion, or termination information; or performance

assessments" that might be contained in his personnel file. (Doc. 52, at 5) (citing *Cox v. N.M.

Dep't Public Safety*, 242 P.3d 501 (N.M. App. 2010)). Having considered the parties'

submissions, the Court disagrees with Aguilar and **GRANTS** Plaintiff's motion.

## BACKGROUND

On May 29, 2017, Aguilar, then an officer with the City of Clovis Police Department,

allegedly released his police dog, Leo, ultimately resulting in Plaintiff's subduction and severe

injury. (Doc. 1). At the time, Plaintiff says he was complying with police orders to surrender himself from behind a shed. (*Id.*). This lawsuit followed. In his three-count complaint, Plaintiff alleges (1) Aguilar and Sergeant James Gurule unreasonably seized him in violation of the Fourth Amendment; (2) the officers used excessive force in violation of the Fourth Amendment by allowing Leo to attack Plaintiff; and (3) the City of Clovis has a policy or custom of inadequate supervision, insufficient training, and failing to discourage constitutional violations that caused the deprivation of Plaintiff's rights. (Doc. 1)

As part of discovery, Plaintiff propounded, among others, the following two requests for production:

> 5. Any and all documents that comprise all or a part of your personnel file, including disciplinary records, and any other documents concerning your hiring, training, duties, performance, assignments, and mental and physical condition.

> 6. Any and all documents concerning or at all relevant to any formal or informal complaint made against or about you, from any source concerning any subject matter.

(Doc. 52-1).

Aguilar's responses[1] cited the relevancy, breadth, and privacy concerns identified above and refused to produce responsive records. In a so-called Rule 37 letter, Plaintiff challenged Aguilar's legal bases for objecting, agreed "to a redaction of the most sensitive of personal information like address, date of birth, and social security number," and asked for a privilege log. (Doc. 49-1). Although Aguilar stood by his objections, he ultimately produced 178 pages from his personnel file along with a privilege log. According to the log, Aguilar refused to disclose

---

[1] Curiously, and contrary to the local rules, neither party has provided Aguilar's responses. Aguilar's response is discernable from his response here and the correspondence attached to the parties' filings. Rather than deny the motion without prejudice, the Court elects the more expedient remedy of deciding the motion based on the parties' characterizations.

records related to an internal investigation, investigative report, and his employment application, which, in turn, included a background check and a psychological evaluation. (Doc. 49-3).

## STANDARD

Federal Rule of Procedure 26 allows for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "When requested discovery appears relevant, the party objecting to production has the burden of establishing the lack of relevance by demonstrating that the request falls outside the scope set forth in Rule 26(b)(1), or that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Shotts v. Geico Gen. Ins. Co.,* 2017 U.S. Dist. LEXIS 171515, at *1 (W.D. Okla. Oct. 17, 2017) (citation omitted). Likewise, where a party resists production of documents on privilege grounds, that party carries "the burden of establishing that the privilege applies." *Zander v. Craig Hosp.*, 743 F. Supp. 2d 1225, 1231-32 (D. Colo. 2010) (citation omitted). Moreover, "the resisting party must expressly assert [the privilege] and describe the nature of the purportedly-privileged documents, ordinarily by tendering a privilege log." *Id.*

## DISCUSSION

Aguilar resists Requests for Production 5 and 6 on four grounds: they (1) impinge on the "self-critical" privilege; (2) implicate "matters of opinion" exempt from disclosure; (3) contravene a constitutional right to privacy; and (4) lack relevance. The Court rejects each basis.

### Self-critical Privilege

The "self-critical" privilege rests on "a concern that disclosing [internal investigations] will deter or suppress socially useful investigations and evaluations or compliance with the law or with professional standards." *Tanner v. McMurray*, 2019 U.S. Dist. LEXIS 76944, at *192 (D.N.M. May 7, 2019). Proponents claim that without it, "individuals and organizations will not

candidly evaluate their compliance with regulatory or legal requirements out of fear of creating evidence that may be used against them in the future." *Id.* The Tenth Circuit, however, has not recognized such a privilege and has cast doubt on its underpinnings. *See Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 437 (10th Cir. 1981) (explaining "it is doubtful that citizens and police officers will absolutely refuse to cooperate in investigations because of a few isolated instances of disclosure"). Many federal courts have expressly rejected the privilege where internal police investigations are concerned. *See Dorato v. Smith,* 163 F. Supp. 3d 837, 892-93 (D.N.M. 2015); *Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D. Cal. 1995) ("[T]he notion that police . . . should be able to . . . shield their internal affairs investigatory process from the public offends basic notions of openness and public confidence in our system of justice.").

The above considerations lead the Court to reject Aguilar's reliance on the self-critical privilege. Alternatively, assuming the privilege applies, Aguilar would have to show: (1) he produced the information pursuant to a critical self-analysis he performed; (2) a strong public interest exists in preserving the free flow of the information sought; and (3) the exchange of information is of the type that would be curtailed if discovery is permitted. *Tanner*, 2019 U.S. Dist. LEXIS 76944, at *211-212. Other than a reference to the privilege in his document log, Aguilar has not carried this burden under any of the prongs. The self-critical privilege, therefore, does not provide Aguilar a basis for refusing to produce the documents requested.

## **Matters of Opinion**

In *Cox*, the New Mexico Court of Appeals answered two questions: (1) whether citizen complaints against the state's department of public safety constitute public records under the inspection-of-public-records statute; and if so, (2) whether an exception to the disclosure requirement applied. 242 P.3d at 504. The court concluded that the complaints were public records and did not satisfy an exception to disclosure. In *dicta*, the court of appeals explained

that in enacting the "matter of opinion in personnel files" exception, the New Mexico legislature "intended to exempt from disclosure . . . personnel information of the type generally found in a personnel file, i.e., information regarding the employer/employee relationship such as internal evaluations; disciplinary reports or documentation; promotion, demotion, or termination information; or performance assessments." *Id.* at 506. Aguilar relies on this broad statement as a justification for withholding documents.

Aguilar's reliance is misplaced. All *dicta* and other distinguishing features aside, *Cox* cannot create a rule of decision for this case because federal law controls privilege. *See* Fed. R. Evid. 501 (explaining that the "principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience" govern the existence and scope of a privilege); *Dorato*, 163 F.3d at 870 (explaining that federal law governs privilege even where the evidence could be relevant to a state-law supplemental claim). Aguilar has not explained how case law, let alone *dicta*, from the New Mexico Court of Appeals could supply a basis for privilege in a case comprised entirely of federal causes of action. The Court concludes Aguilar has not carried his burden to establish any matters-of-opinion privilege exists and applies to this case.

## Constitutional Privacy

A constitutional right to privacy protects a law enforcement officer's personnel file. *See Denver Policemen's Protective Ass'n*, 660 F.2d at 435. This privacy interest is not absolute. *Id.* While an officer may have "a legitimate expectation of privacy" in statements they make in the course of an internal affairs investigation, a countervailing interest exists in "the ascertainment of the truth." *Id.* Moreover, any privacy interest was never meant to reach records that document "officers work as police officers" such a reprimands and complaints that may be in an officer's personnel file. *Id.* The Tenth Circuit has adopted the "Colorado test" to determine how to strike

the appropriate balance. The Court "must consider (1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner." *Id.*

In this case, Aguilar has privacy interest in his personnel file for many obvious items—any document containing personal identifiers such as a social security number. He arguably has a privacy interest in whatever internal investigations are part of his file, but only to the extent the records concern statements Aguilar made to investigators that he understood to be confidential as part of a truth-gathering endeavor. As for the latter category, however, the countervailing interest in the truth is in the Court's view at least equal to confidentiality in internal investigations. Aguilar certainly does not make any argument that his privacy concerns are paramount despite him having the burden to demonstrate privilege.

Moreover, this case concerns allegations of excessive force in violation of the Constitution and an unwritten municipal policy that led to excessive force. "Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all." *Dorato*, 163 F.3d at 891 (citation omitted). Consequently, "it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden." *Denver Policemen's Protective Ass'n*, 660 F.2d at 436 (citation omitted).

Here, it strikes the Court as fundamentally unfair to, on the one hand, permit an allegation of municipal liability and then, on the other, forbid discovery on how the City supervised Aguilar. The Court is cognizant of the many highly personal and sensitive materials in personnel files, but the appropriate remedy is to craft a protective order for the Court's consideration that protects those materials from public consumption, not unilaterally barring access to information. In other words, "the compelling interest in ascertaining the truth overrides the officer['s]

legitimate expectations of privacy." *Dorato*, 163 F.3d at 891. The Court will protect Aguilar's privacy by way of a confidentiality order as ordered below.

**Relevance**

Relying on *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008), Aguilar casts Plaintiff's discovery as "irrelevant kitchen-sink requests." In that case, the plaintiff sued her pharmacy for disclosing confidential medical information in violation of a state statute. In discovery, the plaintiff asked for the offending pharmacist's entire personnel file to determine whether the pharmacist had been disciplined for past violations. The defendant refused to produce the file, and the district court denied the plaintiff's motion to compel. The Tenth Circuit affirmed, unwilling to "gainsay" the district court's exercise of discretion. *Id.* at 649. In so doing, the court of appeals observed that "personnel files often contain sensitive information . . . and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly." *Id.* In fact, "the requirement of Rule 26(b)(1) that the material sought in discovery be relevant should be firmly applied" in such cases and protective orders issued where need be. *Id.* (citation and alterations omitted). Nonetheless, the court explained, "personnel files are not categorically out of bounds" and suggested a more tailored discovery request would have changed the analysis. *Id.*

*Regan-Touhy*'s helpfulness ends at its general proposition that the Court should exercise caution in ordering the production of personnel file. Unlike the plaintiff's single claim in *Regan-Touhy*, Plaintiff's complaint places squarely at issue how the City supervised Aguilar and other officers, trained him and other officers, and discouraged him and other officers from misconduct that Plaintiff says led to the excessive force. Plaintiff's application for employment as an officer could contain any number of clues as to his suitability for employment as an officer, which could shed light on his training and supervision needs.

Moreover, personnel files are often crucial to establishing municipal liability. Under Section 1983, a city is not liable for the constitutional violations of its police officers unless the violation occurred as a result a municipal policy or custom, even if unwritten, and with the municipality's deliberate indifference. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). "While a single prior violation may not ordinarily amount to a 'policy,' the municipality may be liable where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates, but fail to take remedial steps." *Everitt v. Brezzel*, 750 F. Supp. 1063, 1069 (D. Colo. 1990) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)). In fact, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

In terms of discovery, "a plaintiff asserting municipal liability under *Monell* is entitled not only to factual information concerning an officer's alleged past violations, but also to information concerning his superiors' knowledge of those violations and what, if anything, they did about them." *Everett*, 750 F. Supp. At 1069. These materials are typically housed within a personnel file. According to his privilege log, Aguilar did not produce an internal investigation, an investigative report related to a tort notice, and "[e]mployment application records (background investigations, application for employment, pre-employment psychological evaluation)."

From Aguilar's description, the requested records appear plausibly related to a *Monell* claim and, in short, discoverable. Aguilar acknowledges the significance of *Monell* to his personnel file but contends prior incidents or complaints that do not involve his role as a police-dog handler are irrelevant. As Aguilar points out, the Court should be cognizant of relevance as *Regan-Touhy* holds. And, to be fair, prior misconduct must likely be "sufficiently similar" to put

a municipality on notice of problems with their police officers.  *See*, *e.g., Tanberg v. Sholtis*, 401 F.3d 1151, 1169 (10th Cir. 2005).  Here, however, Aguilar draws the relevancy line unilaterally and too narrowly.  While a prior use of force may not ultimately be admissible does not mean at the discovery stage of litigation it is wholly irrelevant. *See Ellis v. Hobbs Police Dep't*, 2019 U.S. Dist. LEXIS 124890, at *2 (D.N.M. July 26, 2019) (explaining "to be discoverable . . . material must be both relevant and proportional to the needs of the case" but "need not be admissible in evidence to be discoverable").  Surely, there are instances of uses of force that could be "sufficiently similar," even though they do not involve the release of a dog.  In any event, the Court is not prepared to deprive Plaintiff of his opportunity to make that argument to the presiding judge, especially since Aguilar offers only a conclusory argument as to relevancy.

## CONCLUSION

For the reasons above, the Court concludes that Aguilar has not carried his burden to demonstrate that Requests for Production 5 and 6 lack relevance or otherwise seek information that is protected by privilege.

**IT IS, THEREFORE, ORDERED** that Plaintiff's motion to compel (Doc. 49) is **GRANTED**.

**IT IS FURTHER ORDERED** that, subject to a confidentiality order, Aguilar supplement his responses to Requests for Production 5 and 6 to include all responsive materials.

**IT IS FURTHER ORDERED** that Aguilar provide to the Court on or before **September 13, 2019**, an agreed upon form of confidentiality order that prohibits beyond the litigants in this case, their attorneys, and agents of their attorneys, the disclosure of any documents produced pursuant to Requests for Production 5 and 6.  If the parties cannot agree upon

a form of order, then on or before **September 13, 2019**, the parties shall submit to the Court their

respective versions of a protective order for the Court's consideration.

_____

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE